UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MECHANICAL POWER CONVERSION, L.L.C.,

    Plaintiff,

                                                    Civil No. 07-12325
                                                  Hon. John Feikens

    v.

COBASYS, L.L.C.,

    Defendant.
_____/

**OPINION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Plaintiff Mechanical Power Conversion, L.L.C., sues Defendant Cobasys, L.L.C., for breach of contract and tortious interference with a contract. Defendant moves to compel binding arbitration of this dispute. Oral argument would not assist me in ruling on this motion, therefore I forego it. See E.D. Mich. L.R. 7.1(e)(2). I hereby GRANT Defendant's motion to compel binding arbitration of this dispute and dismiss this case.

**I.    FACTUAL BACKGROUND**

Plaintiff is an L.L.C. based in and having Articles of Organization filed in New York. (Compl. ¶ 1.) Defendant is an L.L.C. based in and having Articles of Organization filed in Michigan. (Compl. ¶ 2.) Defendant "specializes in developing and manufacturing battery systems for the automobile, telecommunications, and other industries." (Mot. to Compel Arbitration 2.) Plaintiff designs and develops components of electrical systems. (Id.)

Plaintiff and Defendant agreed to multiple purchase orders in which Defendant would buy goods and services from Plaintiff. Three of these orders are at issue in this case. First, on

April 7, 2004, the parties agreed to Purchase Order # 10848 in which Defendant agreed to purchase $97,063.00 of goods and services from Plaintiff to produce a DC-DC Power Supply. (Compl. ¶ 4.) This agreement gave Defendant the right to terminate the agreement, with or without cause, but if Defendant terminated the agreement "it would be liable to [Plaintiff] for all services rendered and all material obtained pursuant to the termination of the purchase order." (Id.) Second, on September 26, 2005, the parties agreed to Cobasys Purchase Order #15075 through which Defendant purchased $146,263.00 worth of goods relating to an Electronic Battery Module ("EBM"), including a functional tester for the EBM. (Compl. ¶ 6.) This Purchase Order was subject to provisions of a Product Development Agreement between Plaintiff and Defendant in which Plaintiff agreed to "use its best efforts" to assist Defendant in developing the EBM. (Compl. ¶ 5.) Pursuant to Purchase Order #15075, and after consulting with Defendant, Plaintiff obtained the services of Custom Systems Integration, Inc. ("CSI") as a subcontractor for this purchase order. (Compl. ¶¶ 7-9.) After CSI was added as a subcontractor, the third purchase order, #15073, was executed between Plaintiff and Defendant for 400 units of the EBM for a total price of $289,302.54. (Compl. ¶ 11.) Both Purchase Orders #15075 and #15073 permitted Defendant to terminate the agreement for its convenience, but if it exercised that right it would be liable for "the Order price for all conforming supplies ... and [] the actual direct costs of work in process and raw materials incurred by seller." (Compl. ¶ 12.) Issues arose in this project regarding what software Defendant needed to provide to CSI to allow CSI to meet its obligations as a subcontractor, and eventually CSI refused to complete the work stating it was no longer feasible to do so due to Defendant's refusal to provide it the necessary software. (Compl. ¶¶ 14-23.) Defendant then terminated the purchase order. (Compl. ¶ 25.) Plaintiff

sought reimbursement pursuant to the clauses in the Purchase Orders regarding reimbursement if Defendant terminated the contracts, but Defendant has not paid such reimbursement. (Compl. ¶¶ 26-28.)

On July 26, 2006, Defendant filed a demand for arbitration with the American Arbitration Association. (Mot. to Compel Arbitration 3.) Plaintiff filed a counter-demand on August 14, 2006, and the parties began arbitrating this dispute. (Mot. to Compel Arbitration Ex. E.) A preliminary hearing before the arbitration panel was held April 27, 2007. (Mot. to Compel Arbitration 4.) At that preliminary hearing, the panel noted that "[n]either party contest[ed] the jurisdiction of the Arbitrators to decide the matter set forth in the demand and counterclaim." (Id. citing Mot. to Compel Arbitration Ex. F.) Discovery deadlines were set, and a final hearing was scheduled to begin October 22nd. (Id. citing Mot. to Compel Arbitration Ex. F.)

Plaintiff filed its Complaint in this matter on May 30, 2007. It seeks damages for breach of contract for Defendant's actions regarding the purchase orders, and tortious interference with a contract for Defendant's actions causing breach of the contract between Plaintiff and CSI. (Compl. ¶¶ 30-44.) On June 8th, nine days after this Complaint was filed, Defendant filed a motion to compel arbitration. Defendant asserted that each of the purchase orders incorporates by reference the Cobasys General Terms and Conditions for Purchase, which includes the following clause:

> **Arbitration.** If both parties agree in writing or if Cobasys elects, any controversy or claim arising out of or relating to these terms or an Order, shall be settled by arbitration before three arbitrators in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The arbitration shall be held in Southfield, Michigan unless Cobasys and Seller mutually agree to an alternate location. In rendering an award, the arbitrators are bound by the Order and must apply the substantive law of Michigan other than its principles of choice of law. Each party has the right before or during the arbitration to seek and obtain from the appropriate court provisional remedies such as attachment, claim and delivery, preliminary injunction, replevin, etc., to avoid irreparable harm, maintain the status quo or preserve the subject matter of the arbitration. The arbitrator shall not award any punitive, exemplary, or consequential damages and shall otherwise be bound by the terms of the Order. All expenses and fees of the arbitration shall [be] borne equally by the parties and each party shall pay its own attorney fees.

(Mot. to Compel Arbitration Ex. B ¶ 26.)[1] Plaintiff argues that this clause does not compel binding arbitration under Michigan law and instead only provides for common-law arbitration, which permits either party to refuse to arbitrate the dispute at any time until the arbitrator makes an award. (Pl. Resp. Br. 12-14.) Plaintiff further argues that because the clause permits Defendant to compel arbitration but does not permit Plaintiff the same right, the clause is without effect. (Pl. Resp. Br. 14-16.) Defendant disputes both of these contentions, asserting mutuality is not required in an arbitration clause such as this one, that the Federal Arbitration Act ("FAA") preempts the Michigan law because this contract involves interstate commerce, and that this contract mandates binding arbitration even under Michigan law. (Def't Reply Br. 1-4.)

## II. ANALYSIS

1. <u>The Lack of Mutuality to the Arbitration Clause Does Not Affect Its Enforceability</u>

Plaintiff argues in its response brief that the arbitration clause may not be enforced because it provided for arbitration "if both parties agree in writing or if Cobasys elects," and

---

[1]The clause quoted here is different than the one attached by the Plaintiff to its Response Brief. (<u>Compare</u> Mot. to Compel Arbitration Ex. B ¶ 26 <u>to</u> Pl. Resp. Br. Ex. C ¶ 26.) However, the differences between the two are immaterial for the issue before the Court.

4

therefore this right to compel arbitration was not mutually held by both of the parties. (Pl. Resp. Br. 14-16.) Defendant cites Sixth Circuit law where arbitration clauses that lacked mutuality but were part of otherwise valid contracts were enforced. (Def't Reply Br. 1 citing Wilson Eng'g Contractors, Inc. v. Minnotte Contracting Corp., 787 F.2d 167 (6th Cir. 1989) and Albert M. Higley Co. v. N/S Corp., 445 F.3d 861 (6th Cir. 2006).) Defendant's position is correct. So long as there is valid consideration for the contract as a whole, an arbitration clause in an otherwise valid contract is enforceable regardless of whether the clause grants all parties the same right to demand arbitration. Wilson Eng'g Contractors, 787 F.2d at 169. Thus, this argument of Plaintiff's fails.

2.  This Arbitration Clause Requires Binding Arbitration

This clause requires binding arbitration. Plaintiff asserts that this clause does not require this because the Michigan Supreme Court has found that language similar to that used in this arbitration clause gives rise only to common-law arbitration, a procedure which permits either party to revoke its agreement to arbitrate without penalty until the time the arbitator issues an award. (See Pl. Resp. Br. 9-10 citing Wold Architects & Eng'rs v. Strat, 713 N.W.2d 750, 754-59 (Mich. 2006).) Defendant argues first that this language is sufficient to meet the requirements for statutory arbitration under Michigan law, and in the alternative that the FAA preempts Michigan's interpretation that this language calls for common law arbitration. (Def't Reply Br. 3-4.)

The FAA preempts Michigan's law regarding common law arbitration. As it is undisputed that this contract "involv[es] commerce" as that definition is used in the FAA, this agreement is undoubtedly within the scope of the federal act. See 9 U.S.C. §§ 1 & 2. Pursuant

5

to the Supremacy Clause, the terms of the FAA govern. U.S. Const. art. VI, cl. 2. The fact that this is an issue of contract interpretation in a case before this Court pursuant to diversity jurisdiction is immaterial; the FAA created substantive law regarding arbitration clauses that must be enforced both in state and federal courts. Southland Corp. v. Keating, 465 U.S. 1, 12 (1984) ("We thus read the underlying issue of arbitrability to be a question of substantive federal law: 'Federal law in the terms of the Arbitration Act governs that issue in either state or federal court.'") quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

The FAA permits arbitration agreements to be revoked only "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This has been interpreted to mean that only doctrines that are generally applicable to all contracts, such as fraud or duress, may be used to invalidate an arbitration clause; any state law, regardless of whether its genesis was legislative or judicial, is preempted if it only applies to arbitration clauses. Inland Bulk Transfer Co. v. Cummins Engine Co., 332 F.3d 1007, 1014 (6th Cir. 2006) citing Great Earth Cos. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002). As no generally applicable doctrine of contract law has been alleged, the arbitration clause is valid and enforceable, and arbitration must be compelled by an order of this Court. See 9 U.S.C. § 4.

Plaintiff's argument that the Supreme Court's decision in Volt Info. Sys., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ., 489 U.S. 468 (1989), prevents this Court from compelling arbitration is incorrect. In Volt, the Supreme Court found that a contract's invocation of one of the California Arbitration Rules, specifically a rule that delayed arbitration of a claim while related litigation between a party to the arbitration agreement and a third party was ongoing, did not conflict with the FAA which governed arbitration under the contract, and

therefore the rule could be enforced. 489 U.S. at 474-79. As the Sixth Circuit said in <u>Ferro Corp. v. Garrison Indus., Inc.</u>, 142 F.3d 926 (6th Cir. 1998), the key difference between the Court's decision in <u>Volt</u> and in subsequent Supreme Court decisions is that in <u>Volt</u> the state rule that was incorporated into the agreement did not deny the parties arbitration but instead merely delayed it, "establish[ing] the efficient order of proceedings." <u>Ferro Corp.</u>, 142 F.3d at 936 citing <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 688 (1996). Thus the FAA and the state law were applied in tandem when they did not conflict, as the FAA had no provision similar to the California rule applied in <u>Volt</u>. <u>See</u> <u>Ferro Corp.</u>, 142 F.3d at 934-35. When a state law adds a requirement to make an arbitration clause enforceable and irrevocable beyond the requirements for any other contractual clause to be enforceable and irrevocable, the FAA preempts that state requirement.[2] <u>See</u> <u>Doctor's Assocs.</u>, 517 U.S. at 686-89 (finding Montana law requiring notice of an arbitration clause to be underlined, in all capital letters, and present on the front page of any contract containing such a clause to be preempted by FAA.). Thus, Plaintiff's argument that the FAA does not preempt Michigan's law in this case is incorrect.

Plaintiff makes a second argument, which is that the parties have chosen Michigan's law to apply to their arbitration, and therefore Michigan's law must be used to determine if arbitration is appropriate. (<u>See</u> Pl. Resp. Br. 10-14.) I find that there is no clear indication in the agreement that the arbitration procedures are governed by Michigan law, and therefore the strong presumption in the federal courts toward compelling arbitration applies. The choice of law clause in this agreement states that "[a]n Order shall be construed and enforced under the laws of

---

[2]This, of course, only applies for clauses that are governed by the FAA; contracts that are not "maritime transactions" or do not "involve commerce" as the FAA defines those terms are not protected by the federal act. <u>See</u> 9 U.S.C. § 2.

Michigan." (Mot. to Compel Arbitration Ex. B ¶ 25.) Although the Supreme Court in Volt interpreted a materially similar clause[3] to mean that the arbitration rules of that state governed arbitration pursuant to the agreement, the Court later stated it did so only because the state court itself had found that to be the case and deference by the Supreme Court to that determination was appropriate. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 60 n.4 (1995). Recently, courts have refused to find that clauses materially similar to this one impose the chosen forum's law governing enforceability of arbitration agreements, instead finding that only the substantive law of that forum will be used to decide the dispute on the merits. See, e.g., Ferro Corp., 142 F.3d at 936 ("Because we are unconstrained by a deferential standard of review, this Court must follow Mastrobuono and join the long line of cases distinguishing Volt, effectively limiting its applicability to cases with a similar procedural posture."). I find this clause does not clearly indicate that the parties have chosen Michigan's law to govern the arbitrability of their dispute, and therefore I must compel arbitration in accordance with the federal presumption to compel arbitration if there is any doubt regarding the dispute's arbitrability. See Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25 ("The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

---

[3]See Volt, 489 U.S. at 472 & 475 (adopting California court's finding that clause stating that contract would be governed by "the law of the place where the project is located" dictated that the law of California, the place where the project was located, governed the arbitration procedures).

3. <u>No Sanctions are Awarded</u>

Although compelling arbitration is the correct result, it would not be appropriate to sanction Plaintiff for bringing this Complaint. Plaintiff's argument that the clause is not binding due to clear Michigan law permitting common law arbitration and the fact that Michigan law is to be used to decide the substance of this dispute is incorrect, but is nontrivial such that sanctions should not issue and each side should pay its own attorneys' fees.

## III. CONCLUSION

For the aforementioned reasons, I hereby GRANT Defendant's motion to compel binding arbitration and dismiss this case. No sanction of attorney's fees is awarded.

**IT IS SO ORDERED.**

Date: August 16, 2007     s/John Feikens
United States District Judge

---

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on August 16, 2007, by U.S. first class mail or electronic means.

s/Carol Cohron
Case Manager